UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BRITTNIE ANDERSON, BIANCA F. CURATOLO,
and DANIEL TAYLOR, on behalf of themselves
and on behalf of all others similarly situated,

    Plaintiffs,

v.                                     Case No.:  0:20-cv-62567-AHS

HAMZEH ALASFAR,
TAYSEER ALKHAYATT, CELLPORT
INTERNATIONAL, INC. and TAHA ALASFAR,

    Defendants.
_____/

**PLAINTIFFSS MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Pursuant to Paragraph 3 of the Parties' Settlement Agreement, Plaintiffs, BRITTNIE ANDERSON, BIANCA F. CURATOLO, and DANIEL TAYLOR (collectively "Plaintiffs"), by and through undersigned counsel, files this Motion asking the Court to enforce the Settlement Agreement against Defendants, HAMZEH ALASFAR, TAYSEER ALKHAYATT, CELLPORT INTERNATIONAL, INC., and TAHA ALASFAR (collectively "Defendants").  To date, despite the fact that Plaintiffs have complied entirely with all terms and conditions in the Settlement Agreement, Defendants have failed to make all of the payments they promised to make to Plaintiffs and their attorneys in the Settlement Agreement.  Therefore, Plaintiffs move this Honorable Court to enforce the Settlement Agreement against Defendants.  In support thereof Plaintiffs state as follows:

1

**Supporting Facts**

1. On January 25, 2022, the Parties attended a Settlement Conference before Magistrate Judge Alicia O. Valle, wherein the parties reached an agreement as to the settlement of Plaintiffs' claims stemming from allegations of violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (FLSA).

2. On February 15, 2022, the Parties filed a Joint Motion to Dismiss the Case, requesting, inter alia, that the Court retain jurisdiction to enforce the terms of the Parties' Settlement Agreement. (Doc. 51).

3. On February 16, 2022, the Court entered an Order approving the Settlement Agreement, dismissing the case, and retaining jurisdiction for six (6) months to enforce the terms of the Settlement Agreement. (Doc. 52).

4. Pursuant to the terms of the Settlement Agreement prepared by counsel for Defendants (attached as Exhibit A), the settlement amount totaled $18,000, and Defendants were required to make the first of five installment payments to Plaintiffs and Plaintiffs' counsel within fourteen (14) days of the Court's approval of the settlement and dismissal of the case. Thus, the due date for the first installment was March 2, 2022. The first installment payments totaled $3,600. The additional four installment payments totaling $3,600 were due on or before March 15, April 15, May 15, and June 15, 2022.

5. Having not received the first installment payment, and allowing the courtesy of an additional week in the event the due date for funds were improperly calculated, on March 9, 2022, the undersigned reached out to Defendants' counsel via email to determine the status of the settlement funds. See Composite Exhibit B.

6. Defendants' counsel responded on March 9, 2022, that there was confusion by Defendants regarding the start date for payment. Defendants' counsel stated that the confusion was now rectified, though. The Parties agreed that Defendants will send both the first and second installment payments to be received by March 15, 2022. See Composite Exhibit B.

7. On March 22, 2022, the undersigned counsel's office received two checks – one issued by Taha Alasfar in the amount of $1,600, and one issued by CP Wireless Inc. in the amount of $1,440. In addition to the checks being issued for amounts well below the overdue amounts, both checks were improperly made out to "Christopher J. Saba", and the check issued by Taha Alasfar was not signed but rather stated "Two Maids Loss" on the signature line.

8. On March 22, 2022, the undersigned notified Defendants' counsel of the multiple issues with the checks received that date. See Composite Exhibit B.

9. On March 24, 2022, Defendants' counsel informed the undersigned that the check from Taha Alasfar was going to bounce and that a new check would be sent on March 25. See Composite Exhibit B. However, it should be noted that Mr. Taha Alasfar's check would not be able to bounce because it could not even be deposited since it was not executed.

10. The undersigned inquired if the new check would be for the full amount overdue. Defendants' counsel responded that his understanding was that two checks were mailed in the amounts of $3,000 and $4,200, and the $4,200 check was the bad check that would need to be replaced. See Composite Exhibit B.

11. However, this explanation is without merit since copies of the $1,600 check and $1,440 checks received were sent to Defendants' counsel two days prior.

12. On March 31, 2022, the undersigned's office received cashier's check again made out to "Christopher J. Saba" and in the amount of only $1,440. The undersigned counsel notified Defendants' counsel of this continued error, and informed that Plaintiffs would need to seek enforcement of the settlement agreement if this was not going to be taken as a serious issue by Defendants. Defendant's counsel stated that he understood and would speak to his clients about the issues. See Composite Exhibit B.

13. By March 31, 2022, the total amount of the checks received by Plaintiffs' counsel that was capable of being deposited was $2,880, and Defendants' counsel was informed of the same. See Composite Exhibit B.

14. On April 4, 2022, the undersigned informed Defendants' counsel that the two $1,440 checks were deposited to trust. Defendants' counsel took issue with this, claiming that this would somehow hinder his clients' ability to correct the remaining overdue payments. The undersigned informed Defendants' counsel that it was in Plaintiffs' interest to receive something from the checks received to date, since they had been waiting nearly a month for payment. The undersigned asked that the remaining checks be issued to Plaintiffs' firm's trust account as a means of expediting the process. See Composite Exhibit B.

15. On April 5, 2022, the undersigned inquired about the status of the remaining payments. Defendants' counsel responded that his understanding was that the Defendants planned to mail the checks, but he was certain "they will be a not so gentle shove in the back," further stating his clients "truly lack a comprehension of the legal system." See Composite Exhibit B.

16. On April 8, 2022, the undersigned informed Defendants' counsel that the original $1,440 check issued by CP Wireless, Inc. had bounced. The response from Defendants' counsel was that he was in trial. See Composite Exhibit B.

17. On April 15, 2022 and April 22, 2022, the undersigned counsel and his office inquired with Defendants' counsel as to the status of the settlement checks. The response from Defendants' counsel was that he was in trial, further stating, "if you believe a motion is appropriate, do whatever you believe is in the best interest of your clients. My clients are attempting to meet their obligations, but it is acknowledged there have been issues." See Composite Exhibit B.

18. Defendants have defaulted on their obligations under the Settlement Agreement. Plaintiffs' have continued to be patient in hopes that this could be remedied without Court intervention. However, to date, the total amount of settlement funds received has been $1,440.

19. At this point, Defendants are in default as to their obligations under the Settlement Agreement, and Plaintiffs' only recourse is Court intervention to enforce the settlement agreement.

## MEMORANDUM OF LAW

**A.   Legal Standard.**

Settlement agreements are favored in the 11th Circuit. Kent v. Baker, 815 F.2d 1395, 1398 (11th Cir. 1987) ("[c]ompromises of disputed claims are favored by the courts"). Whether an enforceable settlement agreement exists is an issue of state law. See Blum v. Morgan Guaranty Trust Co. of New York, 709 F.2d 1463, 1467 (11th Cir. 1983). Accordingly, Florida law governs the Parties' agreement in this case. Under Florida law, settlement agreements will be enforced by courts whenever the agreement's terms are sufficiently specific and the parties agree on the essential elements. Specialty Disease Management Services, Inc. v. Aids Healthcare Foundation, 2003 U.S. Dist. LEXIS 27520 (M.D. Fla. Oct. 21, 2003). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." Id., at *3-4 (citing Schlosser v. Perez, 832 So.2d 179, 182 (Fla. 2d DCA 2002). Whether

to enforce a settlement is an issue of law for the Court to decide without a jury. See <u>Ford v. Citizens & S. Nat. Bank</u>, 928 F.2d 1119, 1121-22 (11th Cir. 1991).

**B.     The Parties' Settlement Agreement is Sufficiently Specific as to all Elements.**

The parties reached a binding and enforceable settlement during a Settlement Conference before Magistrate Judge Valle on January 25, 2022. This agreement was memorialized in a written Settlement Agreement, which became fully executed on February 9, 2022. <u>See</u> Exhibit A. The terms of the agreement were specific, requiring Defendant to make five installment payments to Plaintiffs and Plaintiffs' counsel totaling $18,000.00. In exchange for Defendants' agreement to make those payments, Plaintiffs agreed to dismiss their claims against Defendants with prejudice. Defendants failed to make the promised payments to Plaintiffs. Thus, Plaintiffs have not received the benefit of their bargain with Defendants. Accordingly, the Court should now enforce the Agreement.

## CONCLUSION

Defendants unequivocally agreed to settle this case. The Agreement at issue is fully enforceable. A party is bound by his agreements. Accordingly, the Court should enter an order enforcing the Agreement, and award Plaintiffs their attorneys' fees and costs incurred in addressing the settlement issue, preparing this Motion, and any other efforts to enforce the Agreement.

WHEREFORE, Plaintiffs move this Court for an Order requiring Defendants to immediately comply with the terms of the Settlement Agreement and pay the following agreed-upon amounts from the Settlement Agreement:

a) $16,560 in damages;

b) applicable interest on the $16,560.00 in damages calculated from the date of default, March 2, 2022;

c) attorneys' fees and costs incurred in efforts to enforce the Settlement Agreement; and

d) any other relief this Court deems just and proper.

## CERTIFICATE OF GOOD FAITH

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues and counsel for Defendants' have advised the undersigned that Defendants are "having significant financial troubles and are trying to get the money" but Defendants' counsel "understands the likely need for the motion" and opposes the motion.

Dated this 3rd day of June, 2022.

Respectfully submitted,

/s/ Christopher J. Saba
**CHRISTOPHER J. SABA**
Florida Bar Number: 0092016
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: 813-321-4086
Facsimile: 813-229-8712
Email: csaba@wfclaw.com
Email: tsoriano@wfclaw.com
**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of June, 2022, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to:

Charles Eiss
Shanna Wall
Law Offices of Charles Eiss, P.L.
7951 SW 6th Street, Suite 112
Fort Lauderdale, FL 33324
Email: chuck@icelawfirm.com
Email: shanna@icelawfirm.com

/s/ Christopher J. Saba
**CHRISTOPHER J. SABA**